FRANK'S LIVESTOCK & POULTRY
FARM, INC., a Minnesota
corporation

v.

The UNITED STATES.

No. 721–87C.

United States Claims Court.

July 7, 1989.

Michael A. Pinotti, Roseville, Minn., attorney of record, for plaintiff.

Steven A. Hemmat, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. David Grahn, Dept. of Agriculture, of counsel.

## OPINION

MEROW, Judge.

This matter comes before the court on motions for summary judgment, together with a motion to compel production of evidence. The case was transferred from the United States District Court for the District of Minnesota.

Plaintiff seeks a monetary judgment against the United States for the alleged wrongful denial of benefits under the Commodity Credit Corporation (CCC) grain reserve and price support programs administered by the Agricultural Stabilization and Conservation Service (ASCS) of the United States Department of Agriculture.

*Facts*

The controversy involved in this litigation had its genesis in action taken with respect to plaintiff's 1984 farm-stored corn. Plaintiff's CCC short-term loan on this 1984 corn was scheduled to mature on September 30, 1985. Under the applicable program, plaintiff had three options on the maturity of this loan:

(1) repay the loan;

(2) deliver the corn to CCC;

(3) enter the reserve.

On August 16, 1985 plaintiff requested that this 1984 corn "Enter the Reserve." To enter the CCC grain reserve program, the commodity must meet certain quality requirements. If it is to be stored on the farm, pursuant to 7 C.F.R. § 1421.748, the grain must satisfy the following requirements:

(d) *Farm-stored grain.* (1) Prior to approval of a grain reserve farm-stored loan, the commodity will be inspected by a representative of the county committee and the agreement will not be approved unless it is determined on the basis of such inspection that: (i) The commodity is such that it can reasonably be expected to be stored with safety until maturity of the loan; and (ii) the commodity meets the quality eligibility requirements in accordance with the provisions of paragraphs (b) and (c) of this section. If the loan inspector questions the eligibility of the commodity, a sample shall be drawn and submitted to FGIS for quality analysis.

(2) The producer is responsible for maintaining the quality and quantity of the farm-stored grain. Farm-stored grain which is delivered to CCC must meet the quality eligibility requirements specified in paragraphs (b) and (c) of this section. CCC may reject the delivery of farm-stored grain which does not meet the quality eligibility requirements, in which case the producer shall repay to CCC the loan principal with interest, plus unearned storage payments. If CCC accepts the delivery of the ineligible commodity, the producer shall repay to CCC the loan principal with interest, plus un-earned storage payments, less the settlement value of the commodity as determined in accordance with the settlement procedures set forth in 7 CFR 1421.22.

In carrying out grain programs such as are involved in this case, the Department of Agriculture utilizes committees. The state committees are selected by the secretary and the local/county committees are elected by the producers. 16 U.S.C. § 590h; *see Duba v. Schuetzle*, 303 F.2d 570 (8th Cir. 1962). Under regulations set forth in 7 C.F.R. Part 780, opportunity is provided for reconsideration and appeal, at the county, state and national levels, of program determinations affecting producers.

Following plaintiff's request that its 1984 farm-stored corn enter the reserve, it was inspected on several occasions by representatives of the Faribault County Committee and the County Executive Director of the ASCS office. The corn was found to be heating (indicating moisture) and to contain weevils and weevil damage.

By letter of December 6, 1985 the County Executive Director, Faribault County ASCS office, notified plaintiff as to the inspection results and provided the following determination and options:

It is determined that this grain is not eligible for the grain reserve. It will be necessary for you to do one of the following within 15 days from the date of this letter:

1. Repay the loan

2. Deliver the 1984 corn under loan

3. Purchase a like amount of good quality grain to replace the 1984 corn presently under loan.

If you feel that the facts have not been properly considered in this matter, you may appeal this decision within 15 days of the date of this letter to:

Faribault County ASCS Committee

Box 185

Blue Earth, Minnesota 56013

If you appeal this decision to the Faribault County Committee, you should furnish factual information and reasons why you believe the determination is wrong.

Plaintiff then wrote the ASCS, agreeing that "there are bugs in the grain * * *," but stating that with the advent of warmer weather in the spring, the grain would be fumigated to resolve this problem. As to moisture, plaintiff stated that the top few inches of corn would be removed. If these steps were not acceptable, then plaintiff noted an appeal.

By letter of January 3, 1989 plaintiff was notified that a meeting was scheduled by the Faribault County Committee for January 8, 1986. This was postponed to January 21, 1986 at plaintiff's request. The minutes of the committee meeting on January 21, 1986 contain the following determination:

4. PRICE SUPPORT

The COC met with John Frank to discuss his appeal to not allowing his 1984 corn loan to go in the reserve. The COC determined unanimously that to protect Commodity Credit Corporation's interest, it will be necessary for Mr. Frank to do one of the following within 15 days:

1. Repay the loan.

2. Deliver the 1984 corn under loan.

3. Purchase a like amount of good quality grain to replace the 1984 corn presently under loan.

The corn in question contains grain weevils and damaged grain due to the grain weevils.

\*　　\*　　\*　　\*　　\*　　\*

By letter dated January 23, 1986 plaintiff was notified of the committee action as follows:

In accordance with program procedure the County Committee determined that to protect Commodity Credit Corporation's interest, it will be necessary for you to do one of the following within 15 days from the date of this letter:

1. Repay the loan

2. Deliver the 1984 corn under loan

3. Purchase a like amount of good quality grain to replace the 1984 corn presently under loan.

The corn in question contains grain weevils and damaged grain due to the grain

weevils. Attached please find a delivery notice.

If you feel that the facts have not been properly considered in this matter, you may appeal within 15 days of the date of this letter to the:

　U S Department of Agriculture—ASCS
　Minnesota State Committee
　Room 230 Federal Building and U S
　Courthouse
　Saint Paul, Minnesota 55101

If you appeal this decision to the Minnesota State Committee, you should furnish factual information and reasons why you believe the county committee's determination is wrong.

\*　　\*　　\*　　\*　　\*　　\*

Plaintiff appealed to the Minnesota State Committee and a hearing was scheduled for March 19, 1986. The county committee file was transmitted to the state committee on March 3, 1989.

By letter dated March 21, 1986 the state committee notified plaintiff as follows:

The Minnesota State ASC Committee appreciates the opportunity to discuss your appeal with you, at their meeting on March 19, 1986.

After listening to the information you presented and reviewing the records submitted by the County Office, the Committee has no choice but to determine that, in the best interests of CCC, corn grading # 5 and Sample cannot be allowed into the Reserve.

You may, as was discussed, make an application to your Faribault County ASCS Office to substitute acquired corn to replace the corn presently used as collateral for the corn loan.

If you choose not to do a substitution, you have until April 4, 1986 to make settlement on the loan to the County Office, or delivery orders will be issued.

If you feel you have not been given fair consideration in this case, you may file a written request for review of your case by the Deputy Administrator, State and County Operations, Agricultural Stabilization and Conservation Service, P.O. Box 2415, Washington, D.C. 20013 within

fifteen (15) days from the date of this letter.

By letter dated March 31, 1986 plaintiff appealed the state committee action concerning his 1984 farm-stored corn. By letter dated May 20, 1986 the County Executive Director, Faribault County, ASCS office, informed plaintiff that action on a loan for the 1985 corn could not be taken until the 1984 loan was settled. It was suggested to plaintiff that if the 1984 loan could not be settled prior to the May 31, 1986 deadline for 1985 corn loan disbursement, then plaintiff could obtain prior protection on the 1985 corn by signing a purchase agreement prior to May 31, 1986.

On June 17, 1986 the Deputy Administrator, State and County Operations, ASCS, issued the decision on plaintiff's appeal concerning its 1984 farm-stored corn, as follows:

We understand your position to be that the samples were not accurate or current. The file shows you removed 300 to 500 bushels of the top of the stored grain and contend the grain was in better condition than stated by the county committee. You further contend that the county office was being very unfair and your grain should be considered eligible for the reserve program.

Based on our review of this entire matter, including information presented during the May 1, 1986, telephone hearing, it is our finding that the Minnesota State and Faribault County ASC Committees acted properly in their delegated authority. Samples of the grain show the grain to be weevilly. Program provisions state that grain with insect infestation that cannot be controlled, or grain going out of condition, is not eligible for the reserve program. Therefore, we concur with the Minnesota State ASC Committee's determination and deny your appeal.

This concludes the administrative appeal rights afforded at 7 CFR Part 780, Appeal Regulations.

On June 24, 1986 the Faribault County Committee issued a 15–day delivery notice to plaintiff for its 1984 farm-stored corn.

In the absence of delivery, plaintiff was notified that delivery would be undertaken by the ASCS at plaintiff's expense.

Pending settlement of its 1984 corn loan, plaintiff was notified by letter of September 18, 1986 of the county committee's position concerning subsequent farm-stored loans as follows:

The Faribault County ASCS Committee, in accordance with program procedures, has determined that you are not eligible for farm-stored loans. The reasons for the refusal is the difficulties in settling you[r] 1984 corn loan No. 27–043–634. On June 17, 1986 you were informed by Washington that your appeal was denied. On June 24, 1986 a delivery notice was issued to you on your 1984 corn loan No. 27–043–634. As of today the delivery has still not been completed. However in accordance with program procedure you may still obtain a warehouse-stored loan or a purchase agreement.

If you feel the facts have not been properly considered in this matter, you may appeal within 15 days of the date of this letter to the:

Faribault County ASCS Office
Box 185
Blue Earth, MN 56013

If you appeal this decision, you should furnish factual information and reasons why you believe the county committee's determination is wrong on the enclosed "Request for Reconsideration" form.

Plaintiff completed the reconsideration form as follows (handwritten):

I will make my presentation in person. I don't expect to get a fair hearing when half the members haven't the backbone to stand up for what is right and the other half are on an ego trip. Actually, I would just as soon have you pass the hearing on to the state or federal level where there is some chance of being treated fairly without harassment. I believe the state and federal will recognize a wrong decision which the local board will not.

On October 21, 1986 the Faribault County Committee met with plaintiff as repre-

sented by Karen Frank and John Frank. The record contains minutes prepared both by the committee and by plaintiff. The discussion concerned delivery problems with respect to plaintiff's 1984 corn and the decision of the committee not to grant additional farm-stored loans to plaintiff.

On October 23, 1986 plaintiff was notified of the committee's decision as follows:

The Faribault County ASCS Committee, in accordance with program procedure, has determined that you are not eligible for farm-stored loans. The reasons for the refusal is the difficulties in settling your 1984 corn loan No. 27 043 634. On June 17, 1986 you were informed by Washington that your appeal was denied. On June 24, 1986 a delivery notice was issued to you on your 1984 corn loan No. 27 043 634. We have just received the delivery notice on October 22, 1986. However in accordance with program procedure you may still obtain a warehouse-stored loan or a purchase agreement.

If you feel the facts have not been properly considered in this matter, you may appeal within 15 days of the date of this letter to the:

Minnesota State ASCS Committee
Room 230 Federal Bldg & U.S. Courthouse
St. Paul, Minnesota 55101

If you appeal this decision, you should furnish factual information and reasons why you believe the county committee's determination is wrong.

Plaintiff appealed the denial of farm-stored loans to the state committee which, on December 18, 1986, issued its unanimous decision to plaintiff "to uphold the Faribault County Committee's decision not to allow farm-stored loans to you for the 1985 and 1986 crop year commodities."

Plaintiff then appealed the matter to the Deputy Administrator, State and County Operations, ASCS. A hearing was scheduled for plaintiff to appear in Washington, D.C. on March 24, 1987. By letter dated May 20, 1987 to plaintiff's counsel, the Deputy Administrator issued the appeal decision as follows (in part):

The views and comments furnished by you and your client during the personal appeal hearing held here in Washington, D.C. on March 24, 1987, are appreciated. The information submitted prior to and subsequent to the hearing is also appreciated. As we understand the matter, your client does not deny that the delivery of the 1984 corn loan collateral was delayed, but to the contrary your client offers several underlying causes for the delay. Mr. Frank also raises questions as to the operation of the local ASCS office and the possibility of his being harassed by both the CED and the county committee. You also indicate your client may not have received fair treatment considering the lack of elevator space and other obligations Mr. Frank had to his family at the time of delivery of the grain. You requested that the rights and benefits under the CCC loan provisions be reinstated retroactively to September 18, 1986, for your client.

We have completed our review of the entire case file. It is our finding that the Faribault County Committee acted within its delegated authority in making a judgmental decision that Frank's was not eligible for farm-stored loans based on difficulties experienced by the county officer in getting the loan collateral in question delivered and the condition of the grain at delivery time. Your client does not dispute the basis of the county committee's denial of farm-stored loans. Further, we find no sufficient basis to show Frank's was prevented for reasons beyond its control from timely delivering the 1984 loan collateral. It is apparent that there are personality conflicts involving your client and the Faribault CED and county committee. However, we do not find that Frank's has been treated differently by the Faribault County Office or Committee than other local producers. Therefore, we have no basis to warrant a reversal of the prior decision denying farm-stored loans for 1985 and 1986, and have determined to deny the appeal.

This concludes the administrative appeal rights afforded at 7 CFR Part 780, Appeal Regulation.

Plaintiff then commenced the instant litigation.

## Discussion

The scope of judicial review of grain program determinations by ASCS is very limited. By statute and precedent, the issue open for resolution, on review of the administrative record, is whether the officials acted rationally and within statutory authority. 7 U.S.C. §§ 1385, 1429; *Carruth v. United States*, 224 Ct.Cl. 422, 627 F.2d 1068 (1980); *Swartz v. United States*, 14 Cl.Ct. 570 (1988); *Raines v. United States*, 12 Cl.Ct. 530 (1987).[1]

■ Plaintiff urges that the administrative decisions be overturned on asserted due process grounds—essentially a lack of prior notice as to agency determinations. For example, as discussed above, the county committee's letter of September 18, 1986 notified plaintiff it was not eligible for farm-stored loans and then provided for a subsequent redetermination hearing.

It is concluded that this ASCS procedure does not violate any applicable due process standard. As an applicant for farm-stored loans, plaintiff may not have had a claim of entitlement protected by the due process clause. *Lyng, Secretary of Agriculture v. Payne*, 476 U.S. 926, 942, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921 (1986). In any event, the subsequent hearings provided at the county, state and federal levels satisfy any applicable due process requirement. *United States v. Batson*, 782 F.2d 1307, 1315 (5th Cir.), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986). Plaintiff had full opportunity to understand the basis for the agency action and to present its position with respect to the matters involved.

■ Plaintiff also argues that the determinations as to plaintiff's eligibility for 1985 and 1986 farm-stored loans lack a rational basis in the record.

However, questions as to grain quality and loan settlement ability are peculiarly within the expertise of the local, state and federal officials who are in charge of the ASCS price support programs. Plaintiff has not shown any lack of statutory authority for the actions taken. The record shows a rational basis for the action on plaintiff's 1984 corn in view of its damaged condition and the difficulties with this 1984 loan settlement and the grain condition problem provide a corresponding rational basis for the decision to deny farm-storage for the two subsequent crop years. Other price support measures were available to plaintiff.

■ Plaintiff also claims that its property has been taken by the government without compensation, such that it has a monetary claim under the Fifth Amendment to the Constitution. However, any monetary claim plaintiff has within the jurisdiction provided by 28 U.S.C. § 1491 stems from the statutory ASCS price support program. As the record supports the ASCS determinations taken under this program for plaintiff's 1984–1986 crop years, it follows that plaintiff obtained no "property" interest that could support a taking claim. *See Aulston v. United States*, 823 F.2d 510, 513 (Fed.Cir.1987).

■ Plaintiff also asserts a *"Bivens"* claim and seeks a retransfer to the District Court if it is concluded that the Claims Court lacks jurisdiction over this type of action. In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), it was held that an individual can sue federal officials acting under color of authority who have violated the individual's constitutional rights. *See also Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648

---

**1.** As proceedings are limited to review of the administrative record, discovery (except to present this record) is not appropriate. Plaintiff's motion to compel production is inconsistent with the consideration of this matter on the administrative record.

(1983); *Schweiker v. Chilicky,* —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Claims Court jurisdiction involves claims against the United States, not federal officials. 28 U.S.C. § 1491. Alleged constitutional violations, other than a taking claim under the Fifth Amendment, do not state a cause of action for monetary relief against the United States in the Claims Court. *Carruth v. United States,* 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980); *Reilly v. United States,* 228 Ct.Cl. 843, 844 (1981).

█ Although the Claims Court lacks jurisdiction over a *"Bivens"* claim, retransfer of this claim to the District Court would not be in the interest of justice under 28 U.S.C. § 1631. *See Doko Farms v. United States,* 861 F.2d 255 (Fed.Cir.1988); *Bass v. United States,* 11 Cl.Ct. 295, 301 (1986).

### Conclusion

As it is concluded that the administrative determinations underlying plaintiff's claims have the requisite support, plaintiff has not set forth a valid basis on which to recover monetary relief from the United States. Thus, it is ORDERED that plaintiff's motion to compel production is denied and that final judgment be entered dismissing the complaint, with no costs to be assessed.