ARCHER, Circuit Judge.
 

 Frank’s Livestock & Poultry Farm, Inc. (FLP) appeals from the judgment of the United States Claims Court,
 
 Frank’s Livestock & Poultry Farm, Inc. v. United States,
 
 17 Cl.Ct. 601 (1989), holding on summary judgment that it had failed to set forth a valid basis for money damages against the United States. We affirm.
 

 Background
 

 A complete recitation of the facts underlying this appeal is set forth in Judge Mer-ow’s published opinion and need not be repeated here.
 
 Id.
 
 Suffice it to note here that FLP has sued the United States alleging that the Secretary of Agriculture (Secretary) wrongfully (1) denied entry of its 1984 farm-stored corn into the Commodity Credit Corporation’s (CCC’s) grain reserve program and thus FLP’s entitlement to a long-term loan for the 1984 crop year, and (2) denied FLP’s entitlement to farm-stored loans for the crop years 1985 and 1986. In the 1985 and 1986 crop years, the government instead offered FLP a choice between a warehouse-stored loan or a guaranteed crop purchase agreement. The sole issue raised by this appeal is whether the Claims Court erred in granting summary judgment in favor of the United States.
 

 OPINION
 

 A. Summary Judgment
 

 Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. RUSCC 56(c). In reviewing summary judgment by a trial court, this court must determine for itself whether the standards for summary judgment have been met.
 
 Avia Group Int’l, Inc. v. L.A. Gear Cal., Inc.,
 
 853 F.2d
 
 *1517
 
 1557, 1561, 7 USPQ2d 1548, 1551 (Fed.Cir.1988). In the present case, the facts are undisputed; only legal questions remain. Hence, our review is
 
 de novo.
 

 B. Discussion
 

 FLP’s challenge to the Secretary’s determinations is based on an alleged violation of 7 C.F.R. § 1421.748(d),
 
 [1]
 
 and the due process and taking clauses of the Fifth Amendment to the U.S. Constitution.
 
 [2]
 

 FLP argues that the Secretary’s decision to deny entry of its 1984 corn into the CCC grain reserve program and thus not afford it the associated long-term loan violates 7 C.F.R. § 1421.748(d) because the county committee failed to have FLP’s corn sampled by the Federal Grain Inspection Service (FGIS). It contends that this sampling and testing is required by the regulation. Further, FLP argues that, in any event, its 1984 corn was of a sufficient grade and condition that it should have been allowed into the reserve.
 

 “[0]ur examination of the Secretary’s action is very limited. We do not sit to consider the wisdom of the Secretary’s decisions, but only to determine that he has acted rationally and within his statutory authority.”
 
 Carruth v. United States,
 
 627 F.2d 1068, 1076, 224 Ct.Cl. 422 (1980) (interpreting Section 412 of the Agricultural Act of 1949, 7 U.S.C. § 1429 (1988));
 
 Gross v. United States,
 
 505 F.2d 1271, 1279, 205 Ct.Cl. 605 (1974);
 
 see also
 
 7 U.S.C. § 1385 (1988).
 

 The government argues, however, that 7 C. F.R. § 1421.748 does not predicate the Secretary’s discretion to disapprove a reserve-based loan request on the results of a FGIS sampling. Approval of such a request is dependent upon the commodity satisfying two requirements: (1) an ability to be safely stored, and (2) a certain minimum quality eligibility. 7 C.F.R. § 1421.748(d). Of these two conditions, the government contends that only the second is dependent upon the FGIS quality analysis.
 
 See
 
 7 C.F.R. § 1421.748(d)(1)(h). The first, according to the government, concerns whether the corn “can reasonably be expected to be stored with safety until maturity of the loan.” 7 C.F.R. § 1428.748(d)(1)®.
 

 We are not convinced that both conditions are solely quality-based criteria and can be decided only following a FGIS sampling. The government’s interpretation of this seemingly ambiguous regulation,
 
 i.e.,
 
 that sampling pertains only to the second condition, is reasonable and therefore one to which we defer.
 
 See generally Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
 
 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984).
 

 In addition, the Secretary’s findings that FLP’s corn was “heating,” infested with weevils and damaged due to the weevils are unreviewable in this court, 7 U.S.C. §§ 1385, 1429;
 
 Gross,
 
 505 F.2d at 1277-79, and, notwithstanding the sampling results obtained independently by FLP, fully support the decision to deny FLP’s corn entry into the reserve. Accordingly, the Claims Court correctly determined that the Secretary’s decision did not violate 7 C.F.R. § 1421 and was rationally based.
 

 FLP’s due process claims are that it did not receive a hearing before an impartial tribunal and there was a failure to follow prescribed procedures. Neither contention has any merit.
 

 
 *1518
 
 The appeal rights of a party aggrieved by a determination of a county committee are set forth at 7 C.F.R. Part 780 (1988). These regulations provide that any participant in the price support program who believes that an improper determination has been made by a county committee has the right to an informal hearing before that committee and to have its original determination reconsidered. 7 C.F.R. § 780.3. If unsuccessful on reconsideration, the participant may then appeal to, and be heard by, the state committee and, if necessary, by the Deputy Administrator, State and County Operations of the Agricultural Stabilization and Conservation Service.
 
 Id.
 
 at §§ 780.4-780.5. FLP took advantage of each of these appeal procedures and associated hearings. Thus, even though the county committee made the initial determination and was also the body from whom reconsideration was sought, it is specious to claim this was a denial of due process in view of the subsequent appeals and hearings that were afforded FLP.
 

 In order to prevail in its taking claim, FLP must first demonstrate that it has a property interest in the particular form of price support that was denied,
 
 i.e.,
 
 a long-term grain reserve loan for 1984 or farm-stored loans for 1985 and 1986.
 
 See Aulston v. United States,
 
 823 F.2d 510, 513 (Fed.Cir.1987). FLP has not cited any statute or regulation indicating that it had such an interest. As noted above, the right to a farm-stored reserve loan is predicated on the respective commodity satisfying the two threshold conditions. Because its corn did not meet the first condition, FLP has no property interest in the particular form of price support it desires. As to the 1985 and 1986 loans, FLP had no right to any particular form of price support and the Secretary properly exercised his discretion in offering FLP the alternative forms of price support.
 

 The judgment of the Claims Court is therefore affirmed.
 

 AFFIRMED.
 

 [1]
 

 . 7 C.F.R. § 1421.748(d) states:
 

 (d)
 
 Farm-stored grain.
 
 (1) Prior to approval of a grain reserve farm-stored loan, the commodity will be inspected by a representative of the county committee and the agreement will not be approved unless it is determined on the basis of the inspection that: (i) The commodity is such that it can reasonably be expected to be stored with safety until maturity of the loan; and (ii) the commodity meets the quality eligibility requirements in accordance with the provisions of paragraphs (a) and (b) of this section. If the loan inspector questions the eligibility of the commodity, a sample shall be drawn and submitted to FGIS for quality analysis.
 

 [2]
 

 . Because the denial of FLP's loan request is based upon the Agricultural Act of 1949, 7 U.S.C. §§ 1444d, 1444e, and 1446 (1988), which can be fairly interpreted as mandating the payment of money to participants, like FLP, in the price support program, the Claims Court had jurisdiction under 28 U.S.C. § 1491 (1988) to entertain FLP’s damage claims.
 
 See United States
 
 v.
 
 Testan,
 
 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976);
 
 Hamlet
 
 v.
 
 United States,
 
 873 F.2d 1414, 1416 (Fed.Cir. 1989).