John Cliff **GARRETT**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 257–87C.

United States Claims Court.

July 29, 1988.

Clement Theodore Cooper, Washington, D.C., for plaintiff.

Terrence S. Hartman, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Henry Cohn, Office of General Counsel, Veterans Admin., of counsel.

## ORDER

NETTESHEIM, Judge.

This case is before the court on defendant's motion for summary judgment. Plaintiff has opposed, and argument was held after plaintiff's motion for class action certification had been denied, *see* Order entered Sept. 28, 1987 (Yock, J.), and after the case was transferred.

## FACTS

The following facts are undisputed. John Cliff Garrett ("plaintiff"), a widower, has never served in the United States military. On or about July 5, 1979, plaintiff submitted a bid to purchase improved residential property from the Veterans Administration (the "VA") that the VA had repossessed after a veteran had defaulted on a loan made on the subject property.[1] The VA accepted plaintiff's bid, despite what plaintiff refers to as his questionable credit worthiness, Plf's Proposed Finding No. 3, and closed the sale on September 18, 1979.

The property deed was recorded on that same date. Plaintiff also executed a deed of trust with the VA in the amount of $39,500.00 at 9.5 percent interest, and a promissory note calling for monthly installment payments to the VA of $332.14.

For several years plaintiff made regular payments on the note, but later defaulted. Defendant does not dispute plaintiff's statement that he had paid approximately $17,203.00 on the account up to the date of foreclosure. As of February 1, 1983, the entire sum owed was certified at $39,760.56, plus interest and advances for taxes and insurance. The VA foreclosed on the property. The property was sold at a foreclosure sale on March 30, 1984, to the Administrator of Veterans Affairs. The appraised value at time of foreclosure was $42,000.00.

In October 1984 plaintiff filed a verified complaint against the VA Administrator in the United States District Court for the District of Columbia seeking declaratory relief, rescission of the contract, refund of all prior mortgage payments, an award of treble damages, and class action certification. *Garrett v. Walters*, No. 84-3257 (D.D.C., filed Oct. —, 1984). Count I asked for a declaratory judgment that the VA Administrator's grant of financing to non-veterans was null and void. This count is identical to Count I of the complaint filed in this action. Count II of the district court action sought rescission of the real estate contract between plaintiff and the VA based on the alleged unauthorized acts of the VA Administrator and is identical to Count II of the complaint filed in this court, except insofar as the claim made here is captioned "For Damages Arising Out of Breach of Contract," instead of "For Rescission of Real Estate Contract."

Judge Thomas Penfield Jackson of the district court entered an order on August 14, 1985, dismissing the case with prejudice on the following ground:

Upon consideration of defendant's motion to dismiss, plaintiff's opposition and

---

1. According to plaintiff, a written Contract of Sale was entered into on July 5, 1979, but the submitted "Credit Statement of Prospective Purchaser and Contract of Sale," only constituted a bid. The Sales Closing Statement is dated September 18, 1979.

supplemental opposition thereto, and the entire record herein, it appearing to the Court that plaintiff, a non-veteran, is without standing to sue in that he is without any statutory right or entitlement to benefits under the challenged program, *Warth v. Seldin*, 422 U.S. 490, 514 [95 S.Ct. 2197, 2213, 45 L.Ed.2d 343] (1975), and that he had suffered no "actual ... injury as a result of the putatively illegal conduct," *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 [102 S.Ct. 752, 758, 70 L.Ed.2d 700] (1982), plaintiff having thus failed to state a claim upon which relief can be granted under 38 U.S.C. § 1820(a)(5). . . .

*Garrett v. Walters*, No. 84–3257 (D.D.C. Aug. 14, 1985).

Plaintiff appealed to the United States Court of Appeals for the District of Columbia Circuit. On February 19, 1987, the D.C. Circuit, per curiam, affirmed the district court's dismissal of Count I of the complaint and vacated the portion of the judgment dismissing Count II as not within the jurisdiction of the district court because it constituted a contract claim in excess of $10,000.00, 28 U.S.C. § 1346(a)(2) (1982), remanding this claim for consideration of transfer to the United States Claims Court pursuant to 28 U.S.C. § 1631 (1982). *Garrett v. Walters*, 811 F.2d 676 (D.C.Cir.1987) (unpub.).

On May 6, 1987, before the district court ruled on remand whether to transfer Count II to this court, plaintiff commenced the instant action seeking a declaratory judgment, rescission of the contract, refund of all payments made, an award of treble damages, and class action certification. A new Count III asked for punitive damages for intentional misrepresentations by the VA regarding the Administrator's authority. Class certification was denied by order entered on October 9, 1987, after defendant had moved for summary judgment.

## DISCUSSION

Counts I and II of plaintiff's complaint are identical to those filed in district court, except that Count II is captioned in this action as a claim "For Damages Arising Out of Breach of Contract." Count III for punitive damages is a new claim.

### 1. *Declaratory judgment*

█ Plaintiff's contention that the VA Administrator lacked authority to finance the sale to defendant through the direct vendee loan program forms the basis for his claim for declaratory relief. According to plaintiff, the financing of loans to non-veterans depletes the funds that should be reserved to finance real estate purchases by veterans. Plaintiff requests that he be restored to his *status quo ante* with full refund of all payments made, plus interest.

This court has jurisdiction under 28 U.S.C. § 1491(a)(1) (1982), to hear any claim against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Claims based on breach of contract fall within this court's jurisdiction, and the court can consider equitable doctrines as a basis for awarding money judgments, *Pauley Petroleum Inc. v. United States*, 219 Ct.Cl. 24, 38–40, 591 F.2d 1308, 1315–17, *aff'd*, 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 133 (1979), and can grant affirmative non-monetary relief if it is tied and subordinate to a monetary award. *Austin v. United States*, 206 Ct.Cl. 719, 723 (citing cases), *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975).

The Court of Claims in *Pauley* outlined the origin of equity as it pertains to the execution of pecuniary judgments:

As originally enacted, the Tucker Act specifically permitted the use of equity doctrines to arrive at a pecuniary judgment. The original version of the Act gave this court jurisdiction over all claims based upon the constitution, laws, regulations, or contracts with the United States "... in respect of which claims the party would be entitled to redress against the United States either in a

court of law, *equity,* or admiralty ..." Act of March 3, 1887 (Tucker Act), ch. 359, § 1, 24 Stat. 505 (emphasis added). The Supreme Court in *United States v. Jones,* 131 U.S. 1 [9 S.Ct. 669, 33 L.Ed. 90] (1888), held that this language did not cover the award of equitable *remedies* [emphasis in original], but the Court also held that the statutory language allowed the court to consider equitable principles as a basis for awarded money judgments:

> It seems, therefore, that in the point of providing only for money decrees and money judgments, the law is unchanged, merely being so extended as to include claims for money arising out of equitable and maritime as well as legal demands. *Id.* at 18, [9 S.Ct. at 671].

219 Ct.Cl. at 38–39, 591 F.2d at 1316.

In the instant case plaintiff specifically asks for a judgment "declaring actions by the Administrator of Veterans Affairs relating to the grant of direct financing of real property purchased by Non–Veterans" and for an order "declaring the provisions of 38 U.S.C. 1820(a)(5), and the regulations appertaining thereto and promulgated thereunder as unconstitutional ... insofar as the grant of direct financing by the Administrator of Veterans Affairs to Non–Veterans." Compl. ¶¶ 22A., B. This court has no jurisdiction to grant this purely declaratory relief.[2] *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Twin Cities Properties, Inc. v. United States,* 81 Ct.Cl. 655 (1935); *accord Bowen v. Massachusetts,* — U.S. —, — & n. 40, 108 S.Ct. 2722, 2737 & n. 40, 101 L.Ed. 749 (1988).[3]

#### 2. *Breach of contract*

■ Count II of plaintiff's complaint seeks rescission of the VA purchase contract and promissory note since "the direct financing granted to him, a non-veteran, was contrary to [3]8 U.S.C. 1820(a)(5), and the regulations promulgated thereunder...." Compl. ¶ 29. The VA, by its actions, has not repudiated the contract. *See* Compl. ¶¶ 24–27.

The Administrator of the VA is empowered under 38 U.S.C. § 1820(a)(5) (1982), to "purchase at any sale, public or private, upon such terms and for such prices as the Administrator determines to be reasonable, and take title to, property, real, personal or mixed; and similarly sell, at public or private sale, exchange, assign, convey, or otherwise dispose of any such property...." The statutory language neither states nor suggests that non-veterans cannot be included within the VA Administrator's broad power to sell real property. Plaintiff does not contest the VA Administrator's authority to sell the property to plaintiff, a non-veteran, but, instead, focuses his challenge on the provision of direct financing for the purchase to a non-veteran. Plaintiff points to no statute or regulation inhibiting the VA Administrator's authority to finance (partially) plaintiff's purchase. Indeed, 38 U.S.C. § 1816(d)(1) provides in full:

> Of the number of purchases made during any fiscal year of real property acquired by the Administrator as the result of a default on a loan guaranteed under this chapter for a purpose described in section 1810(a) of this title, not more than 65 percent, nor less than 50 percent, of such purchases may be financed by a

**2.** Even if this court had jurisdiction to provide declaratory relief, Count I is barred by the issue preclusion aspect of the doctrine of *res judicata,* or collatral estoppel, because the dismissal by the district court and subsequent affirmance on appeal rendered a valid and final judgment with findings that were necessary to the judgment on an identical issue actually litigated against the United States or its official officers acting in their official capacity, *Bass v. United States,* 11 Cl.Ct. 295, 299 (1986), by the same party who was fully represented in the earlier proceeding. *Mother's Restaurant, Inc. v. Mamma's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983); *Jarboe-*

*Lackey Feedlots, Inc. v. United States,* 7 Cl.Ct. 329, 336 (1985).

**3.** At argument plaintiff described the declaratory relief sought in Count I as incidental to his Count II claim for breach. The court agrees that this is a permissible construction of the two counts, *i.e.,* that the authority of the VA Administrator must be addressed in ruling on the breach claim. However, Count I is pleaded separately, and the district court and court of appeals addressed it standing alone, which was also permissible. *See supra* note 2.

loan made by the Administrator. The maximum percentage stated in the preceding sentence may be increased to 80 percent for any fiscal year if the Administrator determines that such an increase is necessary in order to maintain the effective functioning of the loan guaranty program.

38 U.S.C. § 1829(a), speaking to loan fees, distinguishes between loans made to veterans and "each person obtaining a loan from the Administrator to finance the purchase of real property from the Administrator." By their terms these statutes establish that Congress authorized the VA Administrator to finance purchases by non-veterans of repossessed property. Moreover, had the VA Administrator's authority to sell to non-veterans or finance directly real estate purchases by non-veterans been restricted, such restrictions are typically "for the protection and benefit of the Government alone." *National Electronic Laboratories, Inc. v. United States,* 148 Ct.Cl. 308, 314, 180 F.Supp. 337, 340 (1960); *Hartford Accident & Indemn. Co. v. United States,* 130 Ct.Cl. 490, 493, 127 F.Supp. 565, 566 (1955). Thus, were the court to find that the VA Administrator had acted beyond his authority, the contract would be binding unless repudiated by the VA. *National Electronic Laboratories,* 148 Ct.Cl. at 314, 180 F.Supp. at 340.

It is undisputed that plaintiff entered into a binding contract with the VA, with the latter acting under the transactional authority of 38 U.S.C. § 1820(a)(5). This statutory power is not limited to non-veterans nor is the authority to finance (partially) sales of foreclosed property to non-veterans is limited.[4] However, even if the VA Administrator did act beyond of his authority, the contract has been ratified by the VA and cannot be rescinded upon plaintiff's request after he has enjoyed the benefits of the contract for approximately four years before seeking to invalidate the contract after his default. *See Adler Construction Co. v. United States,* 191 Ct.Cl.

607, 615, 423 F.2d 1362, 1366 (1970) (rescission not available remedy after contract performance has been completed).

### 3. *Punitive damages*

■ Count III of plaintiff's complaint requests punitive damages and alleges that "the Defendant acted in bad faith in that the Defendant made false representation of material facts and stated, intentionally, facts which he knew to be false when made...." Compl. ¶ 33. Claims sounding in tort are beyond this court's jurisdiction. *E.g., Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967). *A fortiori,* this court is without jurisdiction to award punitive damages. *E.g., Garner v. United States,* 230 Ct.Cl. 941, 943 (1982).

> "[W]hen the loss suffered by the injured party is caused by the breach of a 'specific duty' owed by the Government to him, *i.e.,* the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, ... only state[s] the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation'...."

*Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 750, 508 F.2d 817, 821–22 (1974) (quoting *United States v. Neustadt,* 366 U.S. 696, 706, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961) (ellipses and brackets added)). In a similar case involving mortgage foreclosure by the Government, *United States v. Chelsea Towers, Inc.,* 295 F.Supp. 1242 (D.N.J.1967), the court, in denying plaintiff's motion for summary judgment asserting misrepresentation of costs and rentals by the Federal Housing Administration to plaintiff's detriment, stated:

> The court in *Neustadt* concluded that even if there was 'negligent misrepresentation' on the part of the Government's employees or agencies, such conduct is tantamount to that giving rise to a common law action of deceit and is largely

---

4. Plaintiff does not posit as a genuine issue of material fact that the VA Administrator exceeded the amount of direct financing with respect to plaintiff's loan. *See* 38 U.S.C. § 1816(d)(1).

Instead, plaintiff contends that any direct financing was contrary to the law and beyond the Administrator's authority.

confined to the invasion of financial or commercial interests, for which no action lies against the Government such being barred by the Federal Tort Claims Act, 28 U.S.C. § 2860(h). This then is the rule of law in the present case....

295 F.Supp. at 1247. Plaintiff thus does not assert a claim for breach of contract agreement, but a claim sounding in tort, as he candidly acknowledged during argument.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted. The Clerk of the Court shall enter judgment dismissing Counts I and III of the complaint for lack of subject matter jurisdiction, and judgment shall enter for defendant on Count II so that the complaint is dismissed on the merits as to this claim.

IT IS SO ORDERED.

No costs.