$\circ\!\!=\!\!1145$

**Linda VAIZBURD and Arkady Vaizburd, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 99–413L.**

United States Court of Federal Claims.

March 17, 2000.

Linda Vaizburd and Arkady Vaizburd, Brooklyn, New York, pro se.

Alan Brenner, U.S. Department of Justice, Washington, D.C., for defendant.

### OPINION

BRUGGINK, Judge.

Mister Bumble might have made his judgment—that the law is an ass—less conditional if the operation of Title 28, Section 1500 had been explained to him.[1] The untutored might suspect that the United States govern-

---

1. *See* Charles Dickens, "Oliver Twist," chapter 51.

ment would not rely on traps for the unwary to avoid having to respond to its citizens. Not so. The confluence of the literal reading of section 1500 and the judicial gloss put on it dictate that these pro se plaintiffs must have this taking claim dismissed, despite the fact that it is timely and that the court is given subject matter jurisdiction to hear it. The plaintiffs guessed wrong as to the nature of their cause of action and then compounded their understandable error by commencing suit in district court before suing here.

Pending are defendant's motion to dismiss and plaintiffs' motion to amend the complaint. The matters are fully briefed and oral argument is deemed unnecessary. As explained below, defendant's motion is granted pursuant to Rule 12(b)(1); plaintiffs' motion to amend is denied.

## BACKGROUND.[2]

The complaint here was filed on June 29, 1999. Plaintiffs own ocean front property on Gravesend Bay in Brooklyn, New York. In substance, they allege that the United States Army Corps of Engineers, in implementing a beach nourishment project to protect Coney Island, caused a physical taking of their property without compensation, in violation of the Fifth Amendment. The project consisted of dredging, filling, and construction of groins, or breakwaters, in Gravesend Bay. The purpose was to remove sand from undesirable locations where it had accumulated and deposit it along Coney Island Beach. The groins were built to keep the same sort of erosion from occurring in the future. Plaintiffs allege that the project was poorly designed and that the newly deposited sand ended up accreting onto their shoreline. The effect was that, where once their property ended at an ocean bulkhead, directly contiguous with open water, it now abuts a beach. The complaint alleges that these physical developments would not have occurred but for the government's actions.

The complaint also enumerates less direct consequences of these physical developments. It is asserted that plaintiffs' enjoyment of their property is diminished by: the loss of direct access to open water; the loss of a visual easement across open water, now replaced by a view of a dirty beach on which trash accumulates; loss of the protection from high-crime neighborhoods due to the creation of a land bridge.

On June 22, 1999, a week before this action was commenced, plaintiffs filed an action in the United States District Court for the Eastern District Of New York. Defendants included the United States, the State of New York and the City of New York. The background facts recited in that complaint are basically the same as those recited in the complaint here, with the addition of the assertions about the actions or inactions of state or municipal actors. The complaint asserted several causes of action, including negligence, unconstitutional taking, and violation of both federal and state statutory and procedural rights.

The district court transferred the taking component of the claims against the United States to this court, with consent of both parties, on January 7, 2000.[3] The balance of the district court action was dismissed on February 3, 2000.

## DISCUSSION

Despite having consented to the transfer of the taking claim to this court, the Government now seeks to have the action here dismissed—perhaps an example of the executioner graciously offering to drive the tumbrel. It offers three bases. It contends, first, that the court lacks jurisdiction because of the operation of section 1500. That section ousts this court of what would otherwise be proper subject matter jurisdiction when

**2.** The Government's RCFC 12(b)(4) motion assumes the facts recited in the complaint. The 12(b)(1) motion merely adds the facts of the filing and dismissal of the related action in district court.

**3.** The district court's transfer was pursuant to 28 U.S.C. § 1631, "Transfer to cure want of juris-

diction." The district court could not exercise jurisdiction over the taking claim because it exceeded the dollar limit of district court jurisdiction under 28 U.S.C. § 1346(a)(1). This court could exercise jurisdiction under 28 U.S.C. § 1491(a)(1). Transfer, in other words, was appropriate.

the same matter is already pending in district court at the time suit is commenced here:[4]

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States....

■ A reading of the two complaints demonstrates that the same claims—as that term has been interpreted—were pending here and in the district court. The complaints recite, in substance, the same facts. In addition, the district court tort claim seeks monetary damages, as does the taking claim here. The Federal Circuit has made it clear that a party cannot separate the same operative facts into two different legal theories which seek the same relief, *see United States v. County of Cook, Illinois*, 170 F.3d 1084, 1091 (Fed.Cir.1999); *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed.Cir. 1994); *see also Keene v. United States*, 508 U.S. 200, 213–14, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), even if it is uncertain which legal theory fits. It is unfortunate, but true, that the line separating takings and trespass are less clear than the rule announced by the courts.

■ Dismissal here is dictated even when the district court dismissed the taking claim before a ruling by this court, and did so because it lacked jurisdiction. This is because "pendency," for purposes of applying section 1500, is measured as of the time of the filing of the Court of Federal Claims action. *Keene*, 508 U.S. at 207, 113 S.Ct. 2035. Whether we consider the original complaint (filed June 29, 1999) or the transferred claim (filed, *nunc pro tunc*, on June 22, 1999), there was pending, at either time, an action in the district court on the same "claim," i.e., the tort action.[5] *See County of*

*Cook*, 170 F.3d at 1087 (simultaneous filing is equivalent to earlier filing in the district court).

■ Apparently the only way to have avoided dismissal of the Court of Federal Claims action is if the *entire* district court monetary claim, insofar as the United States is a defendant, had been dismissed prior to the filing of the "same" claim here. According to *County of Cook*, a transfer of all parts of a claim against the United States to this court would accomplish the same effect. 170 F.3d at 1090 n. 8. Presumably this is the case because, despite the fact that the transferred action is deemed filed as of the date of the first filing in district court, the district court proceeding is also deemed never to have been filed.

Neither of these solutions saves the plaintiffs here, however, first, because the comprehensive district court dismissal post-dated the filing here of either the original complaint or the transferred claim, and second, because the transfer was only a part of the monetary claim against the government.[6] The first complaint must be dismissed in other words, because, as of June 29, 1999, the district court tort claim was pending. The transfer of the taking claim did not help plaintiffs, because the district court retained jurisdiction over the tort aspects of the claim, meaning that the transferred taking claim and the retained tort claim were simultaneously pending as of June 22, 1999.

The result—dismissal of the entire action—is neither fair nor rational. It is not fair because confusion about where to file a claim for monetary relief under these circumstances is understandable. It is not rational because the outcome turns on which action began first, and because the protection offered by section 1500 could be afforded by operation of *res judicata*, collateral estoppel, or comity. The result is, however, dictated.

---

4. A later-filed claim in the district court, even though it raises the same theoretical concerns, does not implicate section 1500. *See Tecon Engineers, Inc. v. United States*, 170 Ct.Cl. 389, 399, 343 F.2d 943, 949 (1965).

5. This would not be true of the non-monetary claims brought against the United States before the district court-alleged violations of statutes or

regulations, reviewable under 28 U.S.C. § 1331 and 5 U.S.C. § 702. The relief there would not be monetary.

6. The district court presumably could not have transferred the entire claim against the United States because *it had jurisdiction to hear the tort claim; we did not.*

The court merely notes that the dismissal is for want of jurisdiction—a ground which would appear not to preclude a subsequent refiling here of a new taking claim, assuming the limitations period has not run.

The second and third bases for the government's motion to dismiss are related. The government alleges that the substance of the allegation in the original complaint is that the government's conduct was negligent and therefore unintentional. What this means, according to the government, is both that there is a failure of jurisdiction (the court does not hear tort claims) and that the complaint fails to state a claim (the government is of the mistaken impression that the result—a taking—must be intended). Having concluded that the we lack jurisdiction by operation of section 1500, it is unnecessary to address these concerns. We note, however, that, although the government's motion to dismiss for lack of jurisdiction is well-grounded to the extent that the complaint can be construed as a tort claim, *see* 28 U.S.C. § 1491(a)(1), the entire action could not be dismissed on that basis. The complaint contains an assertion that federal action caused a physical invasion of plaintiffs' property.[7]

### CONCLUSION

It follows that the government's motion to dismiss for lack of jurisdiction must be granted. The motion to amend the complaint is denied. The Clerk is directed to dismiss the complaint without prejudice. Each party to bear its own costs. The Clerk is directed, on the following business day, to file the proposed amended complaint as a new action, waiving the filing fee, and serving the United States pursuant to Rule 4 RCFC. It can be assigned pursuant to Rule 77(f).

---

**7.** This is not to ignore, moreover, the possibility of a disconnect between this court's taking jurisprudence and what actually occurred on plaintiffs' property. A Fifth Amendment claim with respect to real property requires a showing that the government, through authorized action, took a recognized interest in plaintiffs' land. An easement to dump spoil would be such an interest. Incidental impacts, however, perhaps only affecting value, might not be a taking. Taking questions are typically fact intensive.